UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
C.K. and K.K. individually and on
behalf of A.K.,

                                            Plaintiffs,        **COMPLAINT**

BALDWIN UNION FREE SCHOOL DISTRICT,        Civil Action No. 22-2265

                                            Defendant,
-----------------------------------------------------------X

## PERLIMINARY STATEMENT

Petitioners, C.K. and K.K. individually and on behalf of A.K., by their attorneys Michael Gilberg Esq., for their Complaint, respectfully state as follows:

1. This action is authorized under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), Article 89 of the New York State Education Law, N.Y. Educ. Law §§ 4404(3), Section 504 of the Rehabilitation Act ("§504"), 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, to review a final administrative decision of the New York State Review Officer ("SRO") regarding the provision of a free appropriate public education ("FAPE") and unilateral placement of A.K. ("Student"), a student with a disability.

2. C.K. and K.K. ("Parents) on behalf of their son seek a reversal of the decision of the SRO Justyn Bates dated December 22nd, 2021 (attached Exhibit A). This decision reversed the September 24th, 2021, of Impartial Hearing Officer (IHO) Martin Kehoe (attached Exhibit B) finding the district failed to offer the Student FAPE for the 2019-2020 and 2020-2021 school years and awarding tuition reimbursement for the private placement at Fusion Academy for the 2020-2021 school year and tutoring reimbursement for courses after October 2019.

3. The proceeding before IHO Kehoe was commenced by the attached amended due process complaint dated July 12th, 2020. (attached Exhibit C).

4. This decision is timely commenced within four months of the SRO decision consistent with New York Education Law § 4404(3)(a).

## JURISDICTION AND VENUE

5. The Court has proper jurisdiction over this matter under 28 U.S.C §1331, because this action arises under the Constitution and laws of the United States and 28 U.S.C. § 1343(a) in that the claims are asserted under laws providing for the protection of civil rights.

6. The Eastern District of New York is the proper venue under 28 U.S.C. § 1391(b) because the Baldwin Union Free School District ("District") is located in the Judicial District and a substantial part of the underlying events occurred in this district.

7. Plaintiffs have exhausted their available administrative remedies under IDEA, Section 504, and ADA in their claims before the IHO and SRO.

## PARTIES

8. Plaintiffs C. K. and K.K. are the parents of student A.K. who at all times has been a student with a disability as defined under 20 U.S.C. § 1401(3)(A).

9. Plaintiffs have during the entire period in question and continue to reside in Baldwin, New York within the boundaries of the District.

10. Student was classified as a student with a disability under the IDEA with the classification of Other Health Impairment ("OHI") at a Committee on Special Education ("CSE) meeting on June 6th, 2017.

11. Student was late declassified from special education and then was again classified under the eligibility category of Emotional Disturbance ("ED") at CSE Meeting on March 14th, 2019.[1]

12. Defendant Baldwin Union Free School District ("District") is a municipal corporation created pursuant to Article 35 of the New York State Education Law with offices located at 960 Hastings Street, Baldwin, NY 11510.

13. Defendant is a Local Educational Agency ("LEA") as defined in 20 U.S.C. § 1401(19), responsible for providing a FAPE to students between the ages of three and twenty-one who live within the boundaries of the school district and require special education services consistent with the IDEA and New York State Education Law.

## STANDARD OF REVIEW

14. Federal Courts generally defer to state administrative decisions, but that deference has some limitations. Factual findings must be reasoned and supported by the record to merit

---
[1] Student had previously been declassified at a meeting on April 23rd, 2018

deference. **L.O. v NY City Dept. of Educ.,** 822 F3d 95, 109 (2d Cir 2016); **A.M. v NY City Dept. of Educ.,** 845 F3d 523, 534 (2d Cir 2017).

15.   When the SRO and IHO differ in their conclusions reviewing courts should only defer to the SRO when its conclusions are properly reasoned to meet that deference and when the SRO rejects "a more thorough and carefully considered decision of an IHO" the court may find that the SRO's analysis was unpersuasive and defer to the IHO's conclusions. **M.H. v NY City Dept. of Educ.,** 685 F3d 217, 246 (2d Cir 2012).

16.   The Court my give the SRO this diminished deference when it finds that the IHO's analysis is more persuasive. **J.C. v Katonah-Lewisboro Sch. Dist.,** 690 F App'x 53, 55 (2d Cir 2017).

17.   When the SRO and IHO disagree, there must be other extrinsic evidence in the hearing record to justify the SRO's different conclusion or the record as a whole must justify this. **Matter of Bd. of Educ. of Hicksville Union Free Sch. Dist. v Schaefer,** 84 AD3d 795, 796 (2d Dept 2011).

## STATEMENT OF FACTS

18. Much of the background in this case can be found in the family's original Amended Due Process Complaint. (attached Exhibit C). Most of the facts are not in dispute and are summarized in the SRO Decision. (attached Exhibit A).
19. The School Years in dispute are the 2017-2018, 2018-2019, 2019-2020, and 2020-2021.
20. The student was born on August 26th, 2006 and was between 11 and 14 years old during the school years in this matter.
21. The student attended Baldwin Middle School for the 2017-2018, 2018-2019, and 2019-2020 school years. (Sixth through eight grades) and Fusion Academy for the 2020-2021 school year (Ninth grade).
22. The student is diagnosed with Attention Deficit Hyper-Activity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), Major Depressive Disorder ("MDD"), and Social Anxiety Disorder ("SAD").
23. The student has superior intelligence and is very academically curious and works at a pace a faster than his peers and often becomes impatient with peers who cannot keep up at his level. This causes angry outbursts.

3

24. The student also has anger issues and has vicious outbursts when he gets angry as part of his ODD.
25. The student gets bored when the work is too easy, and this causes more issues with anger and homework avoidance. He gets angry when work is not academically challenging for him.
26. The student suffers from serious depression and anxiety related to his disabilities and has never had many if any friends and has had difficulty with social interaction.
27. The student's parents did not agree with the district's IEPs or placements and unilaterally placed him at Fusion Academy for the 2020-2021 School Year beginning on September 1st, 2020, by way of a ten day notice properly made on July 7th, 2020.
28. The parents do not feel that the student was offered a FAPE consistent with the IDEA for the 2017-2018, 2018-2019, 2019-2020, and 2020-2021 school years as laid out in the Amended Due Process Complaint and discussed below. (Exhibit C).

## STATUTORY FRAMEWORK

29. The IDEA was enacted to ensure all children with disabilities have access to a FAPE individually tailored to meet their unique needs. 20 USCS § 1400 et. seq. (2021); **Endrew F. v Douglas County Sch. Dist.,** RE-1, ___US___, 137 S Ct 988 (2017); Education of the Handicapped Act Amendments of 1990, 1990 Enacted S. 1824, 101 Enacted S. 1824, 104 Stat. 1103.
30. The definition of a child with a disability is explained by 20 U.S.C. § 1401(3)(A) and N.Y. Educ. Law §§ 4401(1).
31. For a child to receive a FAPE under the IDEA the child must receive special education defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29).
32. The Supreme Court has stated that an educational program must be "reasonably calculated" to ensure the child is receiving educational benefit and making appropriate progress. **Endrew F.** at 1001 citing to **Bd. of Educ. v Rowley**, 458 US 176, 179 (1982). More recently the court has said this educational benefit must be more than "de minimis." **Endrew F.** at 1001.

33. The IEP is the centerpiece of this individual educational system for disabled children. **Endrew F.** at 994. The IEP must be appropriately ambitious to meet the child's individual needs with appropriate measurable annual goals to ensure the child makes progress. **Endrew F.** at 1000-1001, 20 USCS § 1414 et. seq. (2021).

34. The IDEA further allows in a civil action to review the state's final administrative determination that the court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(c)(ii). The decision to admit additional evidence is left to the federal court to determine. **A.W. v Bd. of Educ. of the Wallkill Cent. Sch. Dist.,** 2015 US Dist LEXIS 46346, at 7-8 (NDNY 2015); **Handleman v Bd. of Educ.,** 2007 US Dist LEXIS 77814, at 6-10 (WDNY 2007).

35. 504 and the ADA both prevent discrimination on the basis of disability and requires reasonable accomodations to so an individual can enjoy meaningful benefit of public services including education. **Fry v Napoleon Community Schs**., 137 S Ct 743, 749-750 (2017). A school district violates these statutes if it denies a student with a disability a reasonable accommodation to enjoy meaningful access to benefit from the public service including education. *Id.*

36. The Supreme Court has long since settled the issue that when a student is denied a FAPE the parents are entitled to reimbursement of a private placement as long as that placement is reasonable. **Florence County Sch. Dist. Four v Carter by & Through Carter,** 510 US 7 (1993). This case has also long since established that a private placement need not be approved by their state education department. *Id.* at 15.

## PROCEDURAL BACKGROUND

**IHO Hearing and Decision**

37. As previously stated, the parents filed the attached amended due process complaint dated July 12th, 2020, pursuant to IDEA, ADA, Section 504, and New York State Education Law against the District. (Exhibit C)

38. Among other allegations the amended due process complaint alleged the district failed to offer AK a FAPE for the 2017-2018, 2018-2019, 2019-2020, and 2020-2021 school years which included improperly declassifying him as a special education student for the period from April 23rd, 2018, through March 14th, 2019.

39. As a result of the district's inability to meet AK's individual needs his parents unilaterally placed him at Fusion Academy on July 7th, 2020, for the 2020-2021 school year. He had previously been receiving classes at Fusion for enrichment due to the district's inability to challenge him academically during the 2017-2018, 2018-2019, and 2019-2020 school years.

40. IHO Martin Kehoe conducted approximately 25 days of hearing (Most dates were no more than 2 hours) over Zoom due to the COVID-19 pandemic and issued his decision on September 24th, 2021, finding that the district failed to offer the Student FAPE for the 2019-2020 and 2020-2021 school years and awarding AK and his parents tuition reimbursement for the private placement at Fusion Academy for the 2020-2021 school year[2] and tutoring reimbursement for courses after October 2019[3]. (Exhibit B)

**SRO Decision**

41. The district appealed to the SRO and the SRO granted to the district's appeal in the decision dated December 22nd, 2021 (Exhibit A).

42. The SRO stated that it believed the IHO found for the parents because the student was twice-exceptional and stated the district had no legal obligation to provide a twice-exceptional program. (Exhibit A-17).

43. The SRO held correctly that a student may not be excluded from special education just because he is academically gifted. (Exhibit A-17). The IDEA specifically requires districts to address student's social-emotional needs by stating disability requiring special education can be because of mental or emotional reasons, not just physical (Especially when it is noted this student was specifically classified under emotional disturbance). 20 U.S.C. § 1401(3)(A) and N.Y. Educ. Law §§ 4401(1).

44. The SRO also held that the Supreme Court found under the standard of **Endrew F.** warrants further consideration of a gifted student. (Exhibit A-17). The SRO also held the Supreme Court's decision reiterated the need for every child to have challenging objectives. (Exhibit A-18).

---

[2] Totaling $76,543.02
[3] Totaling $2,100 out of $6,200 spent

45. The SRO discusses that the district did not have a gifted program the student was excluded from so this point is largely irrelevant. (Exhibit A-18).
46. The SRO held that the IHO was applying a standard that would maximize the student's academic potential rather then the standard from **Rowley and Endrew F.** that requires a program to be reasonably calculated to achieve educational benefit and make meaningful progress. (Exhibit A-19).
47. The SRO held that the IHO was incorrect to find that the district failed to offer a FAPE in the Least Restrictive Enviroment (LRE) because under the 2nd Circuit test the SRO believed the student made meaningful progress in a regular education setting with special education supports and therefore the district was not required to consider a more restrictive placement. (Exhibit A-20).
48. The SRO clearly states that prior to the student returning to the district for sixth grade during the 2017-2018 school year the district was well aware of his emotional challenges and difficulties with peers. (Exhibit A-21).
49. The SRO attributed the parents considering other schools as a factor in its decision. (Exhibit A-22).
50. The SRO discusses the student had difficulty emotionally in school at the beginning of the 2018-2019 school year when he was declassified. (Exhibit A-23). The SRO concedes that the social worker testified the student was tired, slept in school, and was having medication changes. The SRO also discusses the social worker testifying that the student was having academic difficulties for the first time in his career.
51. The SRO mentioned that the district's director testified that they first learned of the student's social/emotional difficulties in January 2019. (Exhibit A-24). At this point she testified she recommended the parents re-refer the student for special education.
52. The SRO found that the student was struggling academically, and his grades were declining during the school year (2018-2019). (Exhibit A-24-25). He was struggling to behave or do work he found boring or irrelevant. *Id.* at 25. He was also not doing his homework. *Id.* at 27-28.
53. The SRO found the academic struggles continued into the 2019-2020 school year and the student was in danger of failing social studies. (Exhibit A-31-32, 34). These difficulties continued during remote instruction due to COVID-19. The SRO mentioned the student

7

sent his ELA teacher an email that he did not care about school anymore and the school should expect more missing work. The social worker contacted the parents about concerns about some of the student's responses on an assignment. *Id.* at 32.

54. The SRO ignored the fact that the 2020-2021 IEP was not significantly different from the 2019-2020 IEP that the student had struggled under so it was not reasonably calculated to provide educational benefit.
55. The SRO discussed that the independent Neuropsychologist and independent Psychiatrist, the student's treating Psychologist and Psychiatrist all wrote and testified that the placement was not working for the student and was not appropriate to meet his needs. (Exhibit A-27, 29-30, 34-35).
56. The SRO and IHO both mentioned that among other accomodations the district gave the student modified homework of 50 percent less homework. (Exhibit A-28, Exhibit B-29).

**Errors by the SRO**

57. The SRO erred in overturning the IHO's finding that the district failed to offer the Student FAPE for the 2019-2020 and 2020-2021 school years and the award of tuition reimbursement.
58. The SRO erred in ignoring the fact that the IHO as the trier of fact who was hearing and visually seeing the witnesses albeit virtually could assess the credibility of these witnesses while the SRO only relied on a written record without viewing any of the actual testimony. This is especially true since the IHO got to witness the student's own testimony over the course of two hearing dates, which the SRO did not. (See Exhibit B-2)
59. As part of the SRO ignoring the IHO's findings as trier of fact was that the IHO stated he initially was inclined to rule for the district but found the parents case persuasive to change his mind which is exactly the scenario where the court should defer to the IHO over the SRO where the SRO rejects "a more thorough and carefully considered decision of an IHO" envisioned in **M.H.** *supra at* 3. (Exhibits A-16, B-21-22).
60. The SRO erred by conceding that the IHO rested his decision on the factors of the student being twice exceptional with high intellectual potential, was emotionally fragile, and had a long history of medication and therapy but then ignoring these facts in rendering its

8

own decision. (Exhibits A-16, B25-27). This is yet another example of the IHO as the trier of fact requiring more deference.

61. As stated, the SRO relied on the belief that the IHO found lack of FAPE because of the district's failure to provide a twice-exceptional program which the law does not require but ignored the vast evidence of the student's emotional fragility and struggles that was the actual basis for why the district did not offer a FAPE. (Exhibit A-17).

62. The SRO erred in finding that the IHO's decision was based upon trying to maximize the student's academic potential rather than simply being reasonably calculated to achieve educational benefit and make meaningful progress. The hearing record and IHO decision clearly establish that despite his academic ability he struggled in some areas and was not receiving benefit since in many subjects he found the work boring and was receiving no actual educational benefit while he was struggling emotionally. (Exhibits B 26-27).

63. The SRO erred in finding that the student made meaningful progress in a regular education setting with special education supports specially designed to address his emotional issues. (Exhibit A-20). This is simply unsupported by the vast record including the student's own testimony, the mothers' testimony, the evaluations of both an independent Neuropsychologist and independent Psychiatrist, the student's treating Psychologist and Psychiatrist, fights over homework, the student running away, suicidal ideation, and general depression all of which informed the IHO's decision. (Exhibit B 26-29). As the IHO stated "The District's Recommendations Underestimated the Student's Vulnerabilities." (Exhibit B-27). The record did not support the district's contention that the student was doing better socially with others.

64. The SRO Erred by not finding a deprivation of FAPE during the student's period of declassification from April 23rd, 2018, through March 14th, 2019. This was despite the fact that the student was still struggling emotionally, and the hearing record indicated services promised during this period were not delivered. As a result, this is an inequity that weighs in the parents' favor. The SRO incorrectly concludes the parent agreed with the declassification which is not borne out by the mother's testimony. (Exhibit A-22).

65. The SRO Erred by considering the parents investigation of other nonpublic schools as evidence that the parents were simply looking for a private placement. The hearing record clearly establishes that this was exaggerated by the district within the hearing and not a

factor in determining FAPE. (Exhibit B 8-9). In the hearing the mother testified that this was not something they were seriously considering, and the SRO cites that the social worker based her assumption of this on the student's own statements. (Exhibit A 22-23). The social worker even admits the student was unhappy the following year as she still probed him on the possibility of a nonpublic placement. (Exhibit A 23). No teacher or professional should assume a fact based on the statements of at this time an 11-year-old child without speaking to the parents. The SRO's decision on this point rests on these statements by an emotionally dysregulated 11-year-old and not on any actual evidence.

66. The SRO erred by conceding the student's difficulties during the 2018-2019 school year when he was declassified but did not finding a lack of FAPE when it was clear at this point the district's program was not meeting the student's needs and the fact that he was struggling academically for the first time proves that the program was not providing the required educational benefit.

67. The SRO erred by not considering that the IHO in his decision points out that for a student who academics always came easy during the 2018-2019 school year he was receiving grades in the 60's and 70's which meant the program was not meeting his individual needs. (Exhibit B-27) Instead of the SRO's claim that the parents wanted to maximize his potential at this point he was struggling to pass and so the program was certainly not providing the required educational benefit.

68. The SRO erred by accepting the contention that the district was first aware of the student's social emotional difficulties in January 2019 when the record indicates otherwise that the district was aware of these as far back as 2017 when he returned to district schools. Further the recommendation at this time the student be reclassified for special education is proof that the declassification was a mistake and therefore he was not given a FAPE.

69. The SRO erred by admitting the student was struggling academically and emotionally during the 2018-2019 and 2019-2020 school years but not finding lack of FAPE due to the IDEA's requirements of providing reasonably challenging objectives since the student clearly did not find the work challenging and as a result was misbehaving. The SRO concedes the student was not doing his homework as further evidence the program was not meeting his needs. The SRO also admits the student emailed his teacher about giving

up and not doing more work which were clear signs of his emotional struggles. The social worker even contacted the parents out of concern. There is nothing in the law that absolved the school of the required services during the COVID-19 shutdown.

70. The SRO erred by disregarding the weight of the independent Neuropsychologist and independent Psychiatrist, the student's treating Psychologist and Psychiatrist all agreeing on the placement not being appropriate when contrasted with the district's contracted psychiatrist who barely met with the student and wrote a poor report. Whereas the IHO who heard this testimony discussed how each of these professionals gave a carefully explained rationale for their recommendations. (Exhibit-B25-27).[4] The SRO states that the IHO gave too much weight to these providers and is not required to by law, but as the trier of fact that was ultimately the decision of the IHO not the SRO. (Exhibit A-36). Instead the SRO wants to substitute its own judgement for the IHO's when the SRO did not hear these witnesses testify to assess credibility.

71. The SRO erred by ignoring the fact that the evidence at hearing demonstrated that the modified homework was not actually delivered as promised in the IEP meaning the district violated the IEP which itself is a lack of FAPE to not deliver the services in the IEP itself.[5]

72. The SRO erred by ignoring the student's own testimony during hearing about why the district's program was not working for him emotionally and would not work. The IHO found lack of FAPE so did not highlight this testimony in his decision, but it must be assumed he was influenced by the students' emotional but well-articulated testimony.

73. The SRO concluded incorrectly that the parents believed the district was required to create or offer a 1:1 program in a private school to make progress. (Exhibit A-36). This is unsupported by the record, evidence, or the IHO's findings of why the district was not appropriate.

74. The SRO concedes the student was only making modest progress despite the requirement under **Endrew F.** of more then "de minimis" progress. *Id.*

---

[4] The SRO also refers to the private psychologist as a counselor on pages 32 and 35 which downplays this man's credentials as a licensed psychologist which is a higher level of education and certification then a counselor.
[5] The IHO also ignored this issue, but it did not matter to his decision since he had already found a lack of FAPE.

11

75. The SRO incorrectly points to the student's struggles in prior nonpublic programs prior to 2017 which were over three years in the past when he was younger as evidence in favor of the district. *Id.*
76. Ultimately the SRO erred by penalizing this student for his intelligence by deciding that because he is smart and when he is not challenged academically, he becomes depressed, anxious, and acts out which means the program is not meeting his individual social-emotional needs. Just because he is a bright student does not mean his social-emotional needs should not be met.

## COUNT I

## Denial of a Free and Appropriate Public Education Consistent with the IDEA

77. As mentioned for the foregoing reasons the SRO's administrative decision of December 22nd, 2021, is erroneous because it misconstrues the record, applicable review standards, and is contrary to the law.
78. As a result of the SRO's erroneous decision, they denied AK of his right to a Free Appropriate Public Education (FAPE) for the 2017-2018, 2018-2019, 2019-2020, and 2020-2021 school years and did not provide Plaintiff's of the relief to which they are justified under IDEA.
79. As he was similarly to the IDEA AK was denied reasonable accomodations he was entitled to consistent with the ADA and 504 to fully access his education.
80. Plaintiffs are entitled to the relief below which is a reinstatement of the IHO's decision.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Assume jurisdiction of this action;

b.      Direct the New York State Department of Education, Office of State Review to produce a certified copy of the administrative record;

c.      Receive the administrative record into evidence;

d.      Reverse the decision of the Office State Review and reinstate the IHO's decision that the defendant denied A.K. a FAPE as defined under the IDEA for the 2019-2020 and 2020-2021 school years;

e.   Reinstate the IHO's award of $76,543.02 of tuition reimbursement for the 2020-2021 school year;

f.   Reinstate the IHO's award of $2,100 of tuition reimbursement for the 2019-2020 school year;

g.   Declare that Defendant failed to offer A.K. a Free Appropriate Public Education for 2017-2018 and 2018-2019 school years;

h.   Award such compensatory education the Court deems just and proper for the 2017-2018 and 2018-2019 school years;

i.   Affirm the IHO's ruling that Fusion Academy was an appropriate placement for A.K. for the 2020-2021 school year

j.   Declare Fusion Academy A.K's pendency placement for the 2021-2022 school year;

k.   Award Plaintiffs reasonable attorneys' fees, costs and expenses at the administrative level, SRO level and this action consistent with the IDEA's fee-shifting provisions;

l.   Declare Plaintiffs the prevailing party;

m.   Grant such other and further relief as the Court deems just and proper.


Date:  April 21, 2022


Respectfully Submitted,

Michael Gilberg, Esq.
Attorney for the Petitioners the family of AK
PO Box 26
Granite Springs, NY 10527
(914) 458-1849
michaelgilbergesq@gmail.com