FILED
CLERK

9:01 am, Sep 21, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
C.K. and K.K., individually and on behalf of A.K.,

                      Plaintiffs,

          - against -

BALDWIN UNION FREE SCHOOL DISTRICT,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

Civil Action
No. 22-2265 (GRB)(SIL)

**GARY R. BROWN, United States District Judge:**

Plaintiffs C.K. and K.K. ("Parents"), individually and on behalf of their child, A.K., (collectively "plaintiffs") brought suit against defendant Baldwin Union Free School District ("defendant" or the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, regarding the provision of a free appropriate public education ("FAPE") and unilateral placement of A.K.  Docket Entry ("DE") 1.  Both sides now move for judgment on the pleadings.  Since the District's Individualized Education Plan ("IEP") offered A.K. a FAPE for the 2019-2020 and 2020-2021 school years, Plaintiffs are not entitled to a tuition reimbursement for those school years.  Therefore, plaintiffs' motion for judgment on the pleadings is DENIED, and defendant's motion is GRANTED.

*Procedural Background*

Plaintiffs requested a hearing before an Impartial Hearing Officer ("IHO").  DE 1-4.  On September 24, 2021, an IHO concluded that the District had not provided A.K. with a FAPE for the 2019-2020 and 2020-2021 school years.  *Id.*  Upon the District's appeal, however, a State Review Officer ("SRO") reversed and found that the District had, in fact, offered A.K. a FAPE during the 2019-2020 and 2020-2021 school years.  DE 1-3.  The Parents commenced the instant

action by filing a complaint on April 21, 2022. DE 1.  The parties then filed the instant cross-motions for judgment on the pleadings on December 16, 2022.  DE 14-1; DE 14-3.

*Factual Background*

The following facts are relevant for the purposes of these motions.  A.K. is classified as a student with emotional disturbance and has been diagnosed with attention deficit hyper-activity disorder ("ADHD"), oppositional defiant disorder ("ODD"), major depressive disorder ("MDD"), and social anxiety disorder ("SAD").   DE 1-5.   A.K. attended a District public school for kindergarten, a non-public school for first through fourth grade, and a different non-public school for fifth grade.  *Id.*  A.K. returned to the District middle school for the 2017-2018 school year.  *Id.* Prior to the 2017-2018 school year, a Committee on Special Education ("CSE") was convened and found the student to be eligible for special education, and therefore entitled to the benefits of the IDEA Act, including a FAPE.  *Id.*  For these purposes, the Court considers only the years at issue identified by the IHO and SRO, 2019-2020 and 2020-2021, during which the Parents unilaterally placed A.K. at Fusion Academy ("Fusion"), a private. 1:1 institution that has not been approved by the State Commissioner of Education as a special education school *See id.*

*2019-2020 (Eighth Grade)*

The CSE held two meetings to develop A.K.'s IEP during the 2019-2020 school year.  DE 1-4.  The first meeting took place on June 20, 2019, prior to the start of A.K.'s eighth grade year. *Id.*  At this meeting, the CSE reviewed an evaluation done by a private neuropsychologist hired by A.K.'s parents, Dr. Marks.  *Id.*  Dr. Marks' report described A.K. as an "intellectually gifted youngster" who has difficulty adhering to established rules.  *Id.*  Dr. Marks recommended that the student be placed in "a private academic setting designed to address the needs of emotionally fragile and dysregulated youth."  *Id.*  Dr. Marks also indicated that the student reported feeling

"under-stimulated" which "conspires with his mood/anxiety and ADHD symptoms" and causes him to "give up on school and creates an obstacle to 'fulfilling peer relationships.'" DE 1-4 at 13. During his testimony, Dr. Marks conceded that he did not speak to anyone from the middle school or review the curriculum prior to rendering his opinion.  *Id.*

A.K.'s seventh grade social studies teacher testified that the student interacted well with his peers and had recently received a grade of 100 on a group project.  *Id.*  He also noted, however, that A.K. was having trouble completing homework for the class.  *Id.*  A.K.'s seventh grade English language arts teacher, Ms. Thompson, testified that the student was "doing very well, had friends in his class, was always respectful, would engage in class discussion, and do his work."  *Id.*  She noted the same concern as the social studies teacher though, citing the student's failure to complete his homework for the class.  *Id.*  The student's participation in the chess club and robotics club during the prior school year was also noted.  DE 1-4 at 14.

The June 2019 CSE created an IEP with specific guidelines and goals for A.K.'s eighth grade year.  *Id.*  Pursuant to the IEP, A.K. was to receive supplementary aids, services, and program modifications that included: one session per week of group counseling, relaxed homework modifications, parent counseling and training, refocusing and redirection, the use of graphic organizers, and presentation choices for long-term projects in ELA, science, and social studies.  *Id.*  Two social-emotional goals were set forth in the 2019-2020 IEP.  *Id.*

A.K. attended Baldwin Union Free Middle School for the 2019-2020 school year and was enrolled in honors classes for social studies, mathematics, and science.  *Id.*  A.K's  report card for the first marking period of the 2019-2020 school year reflected the following final averages: ELA, 70; social studies, 81; mathematics, 96; science, 96; Italian 1, 92; health, 55; and physical education, 80.  As a final overall average for the first marking period, the student achieved an 82.

3

*Id.* And since 2018, A.K. had also been attending supplemental math and English classes at Fusion Academy. DE 14-5 at 30; DE 14-3 at 14.

The second CSE meeting took place on October 24, 2019, and included a review of the current IEP and a review of a private psychological evaluation of the student requested by the parents. DE 1-3. While testimony from A.K.'s teachers and progress report reflected that he was thriving in science, mathematics, and Italian 2, the student was struggling to participate and complete required work in ELA and health. *Id.* The CSE modified the student's IEP to include the following: encouraging the student to seek extra help "in areas he found challenging," and providing access to a computer to type class work and exams. *Id.*

The private psychiatrist who evaluated A.K. testified that A.K.'s issues were "less academic and more emotional." *Id.* On that basis, the parents and their attorney disagreed with the CSE's revised IEP recommendations and asserted that A.K. should be placed full-time at Fusion Academy to address both his academic and social-emotional needs. *Id.* However, representatives of the District reported that A.K. was not visiting the school nurse's office for somatic complaints as frequently as he had the previous year. DE 1-7 at 22. Dr. Galanter, a private psychiatrist, admitted that while A.K. was unhappy at the District middle school, his in-school behavior had improved significantly since the previous year. *Id.*

A.K.'s final overall averages in each class during the 2019-2020 school year were as follows: ELA, 77; social studies, 84; mathematics, 98; science, 97; Italian, 89; health, 73; and physical education, 83. *Id.* In addition, A.K. achieved both social-emotional goals set forth in the 2019-2020 IEP. *Id.*

*2020-2021 (Ninth Grade)*

The CSE held a meeting for the 2020-2021 school year on June 9, 2020. *Id*. The CSE focused largely on the student's social-emotional progress and considered reports from A.K.'s parents, teachers, a private psychologist, and a District social worker. *Id*. The psychologist noted that the student was struggling with major depressive disorder and that he had an "emotional reaction to school," but that he was responding to the implementation of coping skills at home. *Id*. The District social worker, who provided in-school services to the student, detailed A.K.'s immense academic and emotional growth since the sixth grade. *Id*. At the meeting, the social worker described the student's successful integration into the large public-school setting and his active participation in counseling. *Id*. The social worker stated that although A.K. has minimal social interaction and he prefers to be alone, he has the ability and support system in place to develop stronger peer connections. *Id*.

Based on these considerations, the CSE recommended that A.K. attend Baldwin High School, the District high school, where he was accepted into the engineering program. *Id*. The CSE created an IEP which included the following recommendations: continuation of counseling, annual goals that focus on "resilience and social interactions," modifications for homework, implementation of due dates for project components to assist with long-term project completion, additional bi-weekly[1] updates to parents to assist the student's work completion, and quarterly team meetings. *Id*. At the conclusion of the meeting, the parents again indicated that they believed that the District high school was not the right placement for A.K., and Fusion would be best for

---

[1] "'Bi-weekly' has evolved – somewhat inconveniently – to mean both something that occurs once every two weeks or twice per week (though the latter concept is subsumed by semi-weekly). Here, obviously, the Court uses this to reflect the former and more popular usage." *See Birthwright v. Advance Stores Co., Inc.*, No. CV 22-0593 (GRB)(ST), 2023 WL 5718633, at *1 (E.D.N.Y. Sept. 5, 2023).

his social-emotional health. *Id.* The CSE ultimately refused to recommend the placement, stating that Fusion is not an approved setting, and the District was able to offer the student a FAPE. *Id.*

*Statutory Framework*

"The IDEA seeks to provide all children with disabilities 'a free appropriate public education that emphasizes special education and related services.'" *H.W. v. New York State Educ. Dep't*, No. CV 13-3873 (SIL), 2015 WL 1509509, at *1 (E.D.N.Y. Mar. 31, 2015) (quoting *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 831 (2d Cir. 2014)). A FAPE "consists of special education and related services tailored to meet the unique needs of a particular child, which are reasonably calculated to enable the child to receive educational benefits, and provided in conformity with an individualized educational program, or IEP." *Id.* (quoting *Reyes ex. rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014)); *see also C.F. ex. rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 72 (2d Cir. 2014).

The law provides specific guidelines for the creation, implementation, and content of an IEP. First, "IEPs must include a comprehensive statement of the educational needs of the handicapped child and specially designed instruction and related services to be employed to meet those needs." *C.F. ex. rel. R.F.*, 746 F.3d at 72 (purgandum[2]). In addition, the IEP must be "likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement." *H.W.*, 2015 WL 1509509, at *1 (quoting *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 254 (2d Cir. 2009) (purgandum)). Furthermore, an "IEP must be reviewed at least annually and revised to reflect the child's need." *Id.* (citing 20 U.S.C. § 1414(d)(2)-(4)).

---

[2] *See Farmers Property and Casualty Insur. Co. v. Fallon, et al.*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "purgandum" to indicate the removal of superfluous marks for the ease of reading).

In New York, the responsibility for developing IEPs falls to the local CSEs, which are comprised of members appointed by the local school district's board of education, and must include the student's parent(s), a regular or special education teacher, a school board representative, a parent representative, and others. *Id.* (citations omitted). The CSE must consider the following four factors in developing an IEP for a particular student: "(1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." *H.W.*, 2015 WL 1509509, at *2 (citing N.Y. Comp. Codes R. & Regs ("NYCCRR") tit. 8, § 200.1(ww)(3)(i)).

A parent dissatisfied with an IEP may challenge it in an impartial due process hearing, before an IHO appointed by the local board of education. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003)). "The parents may also unilaterally 'enroll the child in a private school and seek reimbursement for the cost of private school education from the local educational agency.'" *H.W.*, 2015 WL 1509509, at *2 (citing *C.L.*, 744 F.3d at 831).

At the due process hearing, the school district bears the burden of proof, persuasion, and production to demonstrate the appropriateness of the IEP, although a parent "seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement." *M.H.*, 685 F.3d at 225 (quoting N.Y. EDUC. LAW § 4404(1)(c)). The IHO's decision may be appealed to a SRO, an officer of the New York State Department of Education. *Id.* Following such review, "either 'party aggrieved' by the findings of the SRO 'shall have the right to bring a civil action' in either state or federal court." *M.H.*, 685 F.3d at 225 (citing 20 U.S.C. § 1415(i)(2)(A)).

*Discussion*

*Standard of Review*

A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995). In reviewing an IEP dispute, a federal court "must base its decision on the preponderance of the evidence." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012). This procedure "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review," *C.F. ex rel. R.F.*, 746 F.3d at 77 (quoting *M.H.*, 685 F.3d at 244), a procedure which has been fairly characterized as "modified *de novo* review." *See, e.g.*, *H.W.*, 2015 WL 1509509, at *13 (citing *A.L. v. New York City Dep't of Educ.*, 812 F. Supp. 2d 492, 501 (S.D.N.Y. 2011)); *P.K. ex rel. S.K. v. New York City Dep't of Educ. (Region 4)*, 819 F. Supp. 2d 90, 103 (E.D.N.Y. 2011), *aff'd,* 526 F. App'x 135 (2d Cir. 2013).

"While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally "lack[s] the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). The amount of weight given to administrative decisions "will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court . . . [and the district court's] acute awareness of institutional competence and role." *M.H.*, 685 F.3d at 244; *accord C.F. ex. rel. R.F.*, 746 F.3d at 77; *H.W.*, 2015 WL 1509509, at *14. Where the findings of the IHO and

8

the SRO conflict, the reviewing court should defer to the final decision of the SRO. *A.C. and M.C.*, 553 F.3d (2d Cir. 2009), so long as the SRO's conclusions "are properly reasoned to meet that deference." *M.H. v. NY City Dept. of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012).

Where parents believe that a district's IEP fails to offer their child a FAPE, "they may, at their own financial risk, enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Gagliardo*, 489 F.3d at 111 (citations omitted). In a tuition reimbursement case, the court engages in the three-pronged *Burlington/Carter* test where: "(1) the [district] must establish that the student's IEP actually provided a FAPE; should the [district] fail to meet that burden, the parents are entitled to reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *H.W.*, 2015 WL 1509509, at *16 (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 114 (1993)). Here, since the District has adequately established that it provided A.K. with a FAPE, the Court need not address the last two prongs.

To determine whether the District has provided a FAPE, the Second Circuit has set forth the following two-part test:

> The first part examines the procedural adequacy of the IEP, asking "whether the state has complied with the procedures set forth in the IDEA." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012) (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005)). Procedural violations will entitle parents to reimbursement only if they "impeded the child's right to a [FAPE], "significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE] to the parents' child," or "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *see also R.E.*, 694 F.3d at 190. The second part of the test examines the substantive adequacy of the IEP by asking whether it was "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. "Substantive inadequacy automatically entitles the parents to reimbursement," if the parents' alternative placement was appropriate and equitable considerations favor reimbursement. *M.W.*, 725 F.3d at 143 (quoting *R.E.*, 694 F.3d at 190).

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 160–61 (2d Cir. 2014).

*Substantive Adequacy of FAPE*[3]

The IDEA requires a FAPE be "reasonably calculated to enable the child to achieve passing marks and to advance from grade to grade." *Rowley*, 458 U.S. at 200.  Expanding upon *Rowley*, the Supreme Court has ruled that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).  The "adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Id.* at 404.  An IEP must include goals and services to enable a child to make both academic and functional progress. *Id.* at 399.  A FAPE need not, however, "maximize the potential of handicapped children commensurate with the opportunity provided to other children." *Rowley*, 458 U.S. at 189–90.  The Supreme Court has found that Congress intended that the IDEA "open the door of public education to handicapped children, not guarantee any particular level of services once inside." *Id.* at 192.

Additionally, after considering an appropriate continuum of alternative placements, the school district must place each disabled child in the least restrictive educational environment ("LRE") that is consonant with his or her needs.  *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 161 (2d Cir. 2014).  To determine whether the LRE requirement is met, the Second Circuit has set forth a two-step, "flexible, fact-specific analysis" for district courts to determine: (1) "whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child," and (2) "if not, then whether the school has mainstreamed the child to the maximum extent appropriate." *Id.*

Here, the district's FAPE for the relevant school years was substantively adequate.  The SRO reviewed A.K.'s report cards and progress reports, as well as testimony from his teachers,

---

[3] Neither party has raised any issues concerning procedural violations, and, as such, the Court need only discuss the substantive adequacy of the FAPE.

school support professionals, and private psychologists and psychiatrists.  During the 2019-2020 school year, A.K. received adequate grades to advance to the District high school the following year.  He was accepted into the high school's engineering program with the opportunity to take honors and advanced placement classes.  In terms of his functional progress, the SRO reviewed testimony from A.K.'s teachers, who discussed his improved in-class behavior and successful interactions with peers.  The SRO also considered the testimony of the District social worker who was impressed with A.K.'s major social-emotional improvement since the sixth grade, his active participation in counseling, and his potential to foster relationships with peers.  A.K. also successfully achieved both social-emotional goals set forth in the 2019-2020 IEP.

The SRO also considered the testimony that A.K.'s intellectual giftedness in certain subjects can lead to frustration and other emotional turmoil for the child.  Although this might suggest A.K. was not progressing in light of his full potential, the District was not required to maximize this potential under *Rowley*.  *See M.H. v. New York City Dep't of Educ.*, 685 F.3d at 245 ("the 'appropriate' education" mandated by IDEA does not require states to "maximize the potential of handicapped children.") (quoting *Rowley*, 458 U.S. at 189–90).

Additionally, the district has satisfied the LRE requirement.  In satisfaction of the first prong,[4] A.K.'s 2019-2020 IEP included one session per week of group counseling, relaxed homework modifications, parent counseling and training, refocusing and redirection, the use of graphic organizers, and presentation choices for long-term projects in ELA, science, and social studies. DE 1-4 at 14.  With these aids and services, A.K. received passing marks in all his classes and achieved both social emotional goals outlined by the IEP.  *Id.*  The 2020-2021 IEP included a continuation of counseling services, a Chromebook for writing, and relaxed homework

---

[4] Since the District has satisfied the first prong of the LRE requirement, the Court need not address the second prong, which determines whether the District mainstreamed A.K.

modifications.  *Id.*  Although A.K. did not attend Baldwin High School for the 2020-2021 school year, the SRO considered this IEP adequate in light of A.K.'s demonstrated academic and social abilities during the 2019-2020 school year.

The SRO reviewed the appropriate legal standards and, in a well-reasoned decision, reversed the IHO's holding.  Both the evidence and the hearing record before the Court demonstrate that the District offered A.K. a free appropriate public education in the least restrictive environment for the 2019-2020 and 2020-2021 school years.  Based on the foregoing reasons, the District properly provided a FAPE to A.K. in the LRE during the 2019-2020 and 2020-2021 school years.

### *Conclusion*

For the reasons set forth above, plaintiffs' motion for judgment on the pleadings is DENIED, and defendant's motion is GRANTED.  The Clerk of Court is respectfully directed to enter judgment for defendant and close the case.

**SO ORDERED.**

Dated: September 21, 2023
            Central Islip, New York

/s/ Gary R. Brown_____
GARY R. BROWN
United States District Judge